Our next case, Terry v. Drummond, number 246046. Counsel, you may proceed. Thank you, Your Honors. Devrata Westy for the plaintiff's appellants. It may please the court. I have to reserve about two minutes of my time today for rebuttal. But I'll start today with the upshot. We are here today because Oklahoma law permits what the Constitution forbids, felony convictions for expression without proof of mens rea. There is no mens rea in Oklahoma's statutory definition of threats constituting riot, but counterman held that the mens rea element is constitutionally required to protect free speech, fair notice, and to restrain overzealous police. And its omission, quote, chills too much non-threatening protected expression, end quote. That omission gave Oklahoma the power to silence the 2020 protest movement in the state. And therefore, this court should vacate the lower court's order and reject defendant's arguments to the contrary, which would functionally insulate threat statutes from constitutional challenge. I'll start first today with why the district court's statutory construction is incorrect and why the motion to certify is an appropriate alternative remedy before moving second into why the statute is unconstitutionally overbroad and vague without mens rea. Could I just ask you, as we get started on that, would adding the word recklessly to any threat make section 1311 constitutional? Yes, Your Honor. And I think it's an important point to flag, especially on the mission to certify, because the question goes directly to the counterman's standard. But I'll start with the statutory construction point and why the statutory construction that the district court adopted below is incorrect. When federal courts are interpreting state law, they are bound to accept the construction that is reasonable and readily apparent from the text. But the district court here, interpreting language that says that any threat to use force or violence with immediate power of execution is a crime, said that the word willfully is nonetheless part of the statute. That was error, because none of the traditional tools of statutory construction under Oklahoma law support that construction, text, case law, and history. Is there anything in Oklahoma law that would suggest that recklessly and willfully are the same thing? There is support, and I believe the case that both the parties are debating about, quick versus gun, based on whether the context of the statute supports a higher level of mens rea. But I think quick versus gun sets the default rule that willfully means something along the lines of voluntarily, ordinarily in criminal law. And the most recent interpretations from the Oklahoma Court of Criminal Appeals said that the term willfully does not connote an awareness of risk or harm to the victim. And so I think that in the context of this statute, it probably means something along the lines of voluntariness. And I think that makes sense based on where the word willfully is purportedly gleaned from in the text. If the word willfully comes from the term threats, which is defined by the definition as just an utterance of an intent to express harm or an intent to harm an individual, then the word willfully probably is connected to the term utterance, which is a voluntary statement, just any voluntary statement. So are you starting with the text? I'll start with the text. Let me ask you a question about the text. So 1311 requires that the threat must be made by three or more persons acting together. Why don't those words suggest that there must be an agreement and therefore some kind of mens rea? So I think it's true that they require some kind of agreement, but I don't think that's enough to give us mens rea. I think we make this point in our briefing that the term common intent, which comes from the acting together language, doesn't set or establish what level of mens rea is supposed to be shared amongst the parties. And I think that's important, particularly for a substantial overbreath and vagueness claim, because the parties on the ground, the people on the ground affected by the statute, need to be able to tell what conduct is prescribed and what conduct isn't. All right, one other question about the text. The statute requires that the threat be, quote, accompanied by immediate power of execution. Why doesn't that phrase limit the coverage of any threat to mostly unprotected speech? Sure, so I have a couple reactions to the immediate power of execution language. I'll start with at its broadest, at its most glossiest interpretation, it probably connotes at most an objective standard. But both this court and the counterman court rejected an objective standard as sufficient to limit threat statutes out of substantial overbreath claims like this one. At its worst, and I think its most reasonable interpretation, what it actually does is it isolates one of the factors that a judge might otherwise take into account in an objective inquiry and elevates it to an element. But I don't think that's enough to save it from a substantial overbreath inquiry either. I think on this point, Virginia v. Black is particularly instructive. Virginia v. Black tells us that you can't substitute a fact, even a particularly relevant fact for context, to substitute for mens rea. Mens rea is indispensable and cannot be replaced despite, no other element can do the work that mens rea does. So is it your position that if counterman isn't satisfied then the statute is per se overbroad, sort of notwithstanding its plainly legitimate sweep? I mean, you don't disagree that it has a plainly legitimate sweep, right? I don't disagree that there are constitutional applications of the statute. I would disagree that it survives a substantial overbreath challenge. I asked you two questions that combine. I apologize, it was inartful. Going back to my first question, what is your position? If counterman isn't satisfied, is it your position that the statute is per se overbroad? I think so, and I think here's why. Counterman explains that when a statute doesn't contain the requisite mens rea of recklessness then there's too much chill on the ground because people on the ground will opt, reasonably well-informed people will opt to self-censor themselves instead of risk arrest prosecution and perhaps an appeal where the state courts will get it right. These are almost word for word what Justice Kagan's opinion for the court said. And the other point I would make is that without recklessness in the statute, the prosecution is never held to the standard that counterman sets out, which means that there's always a risk that the underlying speech of the prosecution is protected. But you have to show that it's a substantial amount of protected speech, and why isn't it that the other sort of narrowing language within the text of the statute itself, leaving aside the district court's construction, doesn't affect, that doesn't make it constitutional? Sure, so besides the points I was making earlier with Judge Mathison about the immediate power of execution language, not doing the work to limit it out. I think it might be helpful here to focus perhaps on an example that we said in our brief. So one of the categories of speech that is protected that we're worried about with the statute is things like jokes or hyperbolic expressions. So imagine someone who's at a bar with their friends, three or more people acting together, and they're drinking a cocktail, and they make a joke about throwing a Molotov cocktail. If they have a lighter on them, they have immediate power to execute on that threat, and it constitutes a riot under Section 1311. And if those facts sound ridiculous, that's actually the facts of Perez versus Florida, slightly modified to accommodate the immediate power of execution language in the statute. And that conviction was affirmed by the Supreme Court, or well, certainly was denied by the Supreme Court in that case. What do we do with the more recent Oklahoma cases where either in the charging document or when the court is considering jury instructions and approving those instructions, it contains a mens rea element? Either they state it in the charging document, willfully, unlawfully, intentionally, or the jury instructions include that. Doesn't that tell us that, I mean, if you approve the jury instructions, the court is saying these are the elements of that statute. So I'll take the charging documents first before addressing the jury instructions. I don't think that the charging documents are at all a reliable indicator of the statute's construction or what reasonably well-informed people on the ground can expect for their prescribed conduct. And I think here's why. Most of the charging documents my friend on the other side and the district court cite come from well before the turn of the century, usually in the early 20th century. And in all of the cases that the district court cited and my friends are citing, the issue of mens rea was never teed up. And so it would be like if on a complaint alleging negligence, if the plaintiff alleges, for example, injury, duty, breach, and causation, but then also says the defendant's conduct was willful, so we also get punitive damages. And the court says something along the lines of the plaintiff has adequately or sufficiently alleged negligence. That doesn't suddenly elevate the willful conduct element into an element of the negligence claim. All they're saying is that the complaint is sufficient. The same is true for the cases that my friend cites. Well, for charging instructions, I mean, charging documents, I think it's a little different. On jury instructions, this is what the jury is told they have to find in order to find that you have violated the statute. So to me, that has a little more weight than the charging documents. So then I'll turn to the jury instructions. And here I really urge the court to read at the jury instructions of the defendant's site, because there is no mens rea in the threats definition that the jury instructions that the defendant cite. Well, I don't think any of them involved a threat. So I think that there are two jury instructions that are cited in the briefs. One is cited contemporaneously with the adoption of the statute, and one is proposed by the friend that is the current jury instruction. Neither of them contain a mens rea to limit the definition of threats under the statute. I think that's particularly harmful for the position of my friend on the other side. Well, let me give you one of the cases. This is Johnson v. State, OCCA 1919, that upheld the jury instruction, which included the phrase common design and intent, and included the phrase any threat to use force or violence. Why doesn't that show a narrowing construction of section 1311? So I don't understand Johnson v. State to tell us what the level of mens rea is there. And I think this goes back to your earlier question, which is that common design or intent still doesn't tell us what level of mens rea and what people on the ground can expect in terms of police enforcement of the statute. Well, but I understand your argument to be that even willfully and common intent are not at least readily ascertainable from the Oklahoma cases, because most of them involve conduct rather than threats. But the Johnson case gave me a little pause, so that's why I'm asking you about it. So I don't think that we have qualms with the interpretation of common intent, because I think that does flow quite naturally from acting together. I just don't think that it provides the mens rea element that Counterman was talking about. And I also want to, before my time expires in the opening, emphasize that even if the common intent prong does suggest that there's a mens rea, then we walk right into the vagueness problem, which is that this is a joint liability statute, which is particularly alarming, because not only do speakers not know what speech is covered and what speech is not, because there's no identifiable level of mental state, but they also don't know how to adequately distance themselves from other speakers on the ground to protect themselves when other speakers might cross the line. Could I just ask you, though, at page 15 of your brief, you say the text of 1311 is unambiguous. If that's so, why would we need to certify a question? So we maintain that there's no evidence of mens rea in the statute, and we don't think that that's disputable. But I think our motion to certify acknowledges that the record on this point is quite old, it's quite stale. The last time that the Oklahoma Court of Criminal Appeals dealt with the statute was in 1947. And so if the court wants the most accurate reading of the statute, it can get that directly from the Oklahoma Court of Criminal Appeals. I understand, but that suggests that it is ambiguous, that it isn't as clear as one would like, and direction is needed. But if it's unambiguous, why would we need help? So if the court believes that there is, the mens rea is unambiguously not there, then you're correct. The motion to certify is not necessary, you can reverse on that basis. But the motion to certify exists as an alternative to affirmance, because at the very least, a narrowing construction should issue from the state court, not the federal courts, so that at the very least, we know what the statute says authoritatively. I see my yellow light is on, so if there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you, counsel. Good morning, your honors. Cullen Sweeney for Defendant's Appellees. Counsel, what are the elements of a 1311 offense? So the elements are straightforwardly set out in the statute. Any use of force or violence, or, as relevant here, any threat to use force or violence, immediate power of execution, the joint purpose or common element factor, three people, the numerosity, and acting together, and without authority of law. No mens rea. No mens rea. What happened to the district court's statement of what it means? You didn't include the other stuff. We would contend that there is a mens rea that can be readily imported under very common, well-established principles of interpreting or reading into the scienter or mens rea element. So let me, I just want to make clear, in answer to Judge Rossman's question of what the text of the statute provides for the elements, you concede there is no mens rea. Looking, of course, looking solely to the word, to the text, we can't go, of course, we can't get around that, but. But don't you argue in your brief that any threat means true threat? I think threat, no, I would not go that far. I think that a, in this case, a threat to use force of violence would be, I see, I'll get away from the word true because I don't think it does any significant work with respect to the statute. We're dealing with a force of violence or the threat thereof. I don't think that the true doesn't add anything to the equation, and again. I was interested, now that you mention that, in looking at this again, if there is a mens rea to be implied somewhere, you've got the conduct part of the statute, force or violence, and then you've got the threat part of the statute. If there is a mens rea, is it the same one for both, or is there a different mens rea for the conduct and another one for the threat? I think it's certainly the same mens rea. There's nothing on the text of the statute or in the Court of Criminal Appeals's line of interpretation that would indicate there was any reason to differentiate between those. So if it's reckless, if it is reckless, that would be the mens rea for the whole statute? It would be reckless all the way through, and under countermeasure, it has to be. Well, it does for the threat. For any threat, yes. So you agree that recklessness is the requisite mens rea for this statute after countermeasure? I don't, there's no other way. There's no other way. There is no other way, it's come from on high. It's come from on high, indeed. So if the district court, instead of recklessly, says willfully, and Oklahoma law says willfully is not the same thing as recklessly, why don't we have a non-reasonable interpretation here and reverse the blair? Well, in this case, of course, the district court had the benefit of countermen. And so I think implicitly, at minimum, the district judge's gloss on the willful phrasing was certainly with not just the benefit, but the binding command of countermen. How can you comply with both a willful and reckless mens rea, is that what you're contending? I think that the common notion of willfulness would have to be subsumed into the recklessness definition. And to orient things differently, I think the only remedy, which I don't think is reasonable in the case of statutes being interpreted in light of new Supreme Court precedent, is for a legislature itself to insert exactly those words. But that's not a burden that's required of courts or legislatures. Well, the district court performed rather traditional, conventional, over-breath analysis. And the first step is to construe the statute. And part of the analysis was to determine whether Oklahoma case law had performed some kind of narrowing interpretation. Yes. Does your argument depend on the validity of that analysis? In other words, are you saying the district court got it right? Yes. What if we decide that we don't think the district court got it right because the OCCA has not provided reasonable and readily apparent narrowing construction of the words any threat under 1311 as requiring a mens rea? If that's how we look at those Oklahoma cases, contrary to the district court, I'm not sure why you would oppose certification under those circumstances. Well, as that question is teed up, Judge Matheson, then we, as an alternative to reversal, we would embrace certification to let the Court of Criminal Appeals express what we think they've essentially been saying all along, i.e. for over a century. I thought that's what you might say, but I wanted to make sure. Well, the Oklahoma case law, it's very old. They haven't really looked at this statute in a long time. Yes, they are. If you look at the cases that are closest to when the statute was passed, I mean, we've got a case that says the only elements are and has no mens rea in it, and I'm gonna find the name of that case in just a minute. Wouldn't we look at the interpretation of the language of the statute closest to when it was adopted? Well, and that's exactly what the district court did, and it's specifically Castile v. State, which I believe is a 1916 decision, and the willful and common intent language was directly imported from that decision. I know there are a cluster of criminal appeals court cases from around the time of that enactment, but all of those that do address the common intent and willfulness element are all, sometimes I think the factual context of the force of violence, not the threat, but the force itself, do not always provide the full gloss, but the district judge, I think, honed in on precisely the ones that do. But if the cases are mixed, how can it be readily apparent? Isn't that the standard you have to satisfy? Or defend? That's the standard the district court had to apply.  It is, well, reasonable and readily apparent. Not an unreasonable construction, and I think the closest ones, not mixed, but the closest within the factual zone and the legal zone of interpretation do support that Castile line. And Castile relies on, I think, a 1911 case that cites extensively called the Proctor. Same intent language, and that would have been issued only a year after the statute's enactment. Well, in 1910, in Cochran v. State, the court is looking at whether you can convict a defendant of robbery based on an information that charged him only with riot, and what the court focuses on is that the elements of riot doesn't have any intent requirement where robbery does. I mean, that one's pretty bad for you, isn't it? I, and so I think in Cochran, that would be, I would try to cabin that to its facts, which involved violent conduct, where I think the, maybe the court didn't have to reach or labor to reach the intent or joint purpose element, and that's the best limiting clause I can give on that. Well, the court stated the only elements of riot are the use of force or violence or threats to use force or violence accompanied by immediate power of execution, and contrasted that with robbery, which contained varying degrees of intent, and said it's not good enough to. I'm perceiving that maybe the district courts and our position on Court of Criminal Appeals precedent might not have the clarity that the bench sees. Well, I see a fair amount of inconsistency, and I see a difference between Cochran when they're actually deciding what are the elements of robbery, and some of the later cases where they're saying this information or these jury instructions were, quote, sufficient. Going to the jury instruction or charging element cases, I see that in, if there's a through line through any of these cases, they're still interpreting and upholding the statute with an imported common law meaning, and when the occasion is there to bring it up, the common intent. I take it you would agree that federal court, whether it's district court or this court, may not itself search for a narrowing construction. In other words, if there's gonna be a narrowing construction, it's gotta come from the Oklahoma courts. No, I think that if any court finds that it's readily susceptible to narrowing, then a federal court could make that determination just the same. I'm gonna rephrase. To the extent that a federal court could do a narrowing construction, it needs to be based on reasonable and readily apparent state law, including state court interpretations. In other words, the district court or this court couldn't just say, well, counterman got decided, must be recklessly, and we're done. That seems a little too easy. That option isn't available, correct? Yes, correct. Okay. Well, your honors, are there any other questions, Elie, on certification or? Well, I'd be interested in knowing what you think the phrase common intent means. I think it is a, at the time of the enactment, it would imply and carry with it a common law understanding of joint purpose and an intent to act unlawfully. And then if you, I think if that is read or harmonized in line with contemporaneous precedent dealing with a willfulness standard being equated to recklessness, like in the 1917 case of Wick v. Gunn, then I think these are, the search for meaning or the desire for clarity are usually in law essentially flawed endeavors. I would contend that the district court did find something reasonable and something apparent enough from the Castile and Proctor line of jurisprudence. And when read conjointly with other contemporaneous understandings, then I think it is a defensible and affirmable construction of what 1311 says and always has said. In Castile, the mens rea that was talked about is willful, willfulness. Yes. So if we were to accept that willfulness and recklessness are not necessarily the same thing and that recklessness is a higher level of mens rea, then those cases wouldn't really be enough to comply with the most recent Supreme Court true threats authority. Would you agree with that? I think that I would, as framed, yes. But as in line with the precedent as we're interpreting, I would still hold that it's adequate. Because you say willfulness and recklessness are equivalent. And that's a question. Under WIC v. Gunn, yes. There's a, and I can quickly point you toward, there is a 1922 Oklahoma Supreme Court decision, U.S. Zinc, which also adopts the recklessness language. Almost 100 years later, the Oklahoma Supreme Court is repeating the U.S. Zinc language, importing that WIC v. Gunn recklessness understanding. It's a 2019 Oklahoma Supreme Court decision. I think these are, and not in our appellee's brief, but I would point you to that case law on the recklessness standard. I think the larger point being that there is a discernible, I would hope a readily discernible through line in Oklahoma state jurisprudence that illuminates the meaning and effect of section 1311. Thank you, counsel. Thank you, your honors. Thank you. Thank you, your honors. A couple quick points. I heard my friend today to make an important and dispositive concession. They cannot argue with the text of the statute which does not include mens rea. That disposes of the statutory construction point, and you can vacate or reverse on that basis alone. But I also want to emphasize that it is not for the federal courts to add a gloss to state law because it is neither binding on defendants, nor does it remedy the plaintiff's harm or the chill to their speech. If any gloss is to come, it should come from the state courts in the first instance. I also want to emphasize that the word common intent does not include a mens rea element. It is very common in Oklahoma civil law statutes that create joint liability in torts. We explained that in our opening brief, and I don't take the defendants to contest that in their response brief. Finally, I want to address Judge Rossman's point earlier when I was opening about the substantiality of the over-breath. I think, again, I want to underscore that counterman squarely holds that without a subjective state of mind, it chills too much non-threatening protect expression that's the word for word quote of counterman and is on all fours with this case. But no matter how this court rules, whether it affirms, vacates, reverses, or certifies, the court should make plain that the punishment of threats requires proof of recklessness and the failure to include such a requirement in criminal statutes regulating expression is a constitutional defect of substantial proportions. The court should reach and reject defendants' contrary arguments regardless of how it disposes of the case. Thank you, your honors. Thank you, counsel. Appreciate the arguments this morning. Very interesting case. It's helpful to have the discussion. The case will be submitted and counselors excused. And the court will stand in recess subject.